**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

KEVIN M. ROUSE,

        **Plaintiff,**

v.                                      **Case No.  8:08-cv-2281-T-23TBM**

MICHAEL J. ASTRUE,
**Commissioner of the United States**
**Social Security Administration,**

        **Defendant.**

_____/

## REPORT AND RECOMMENDATION

      The Plaintiff seeks judicial review of the denial of his claim for Social Security disability benefits and Supplemental Security Income payments.[1]  Because the decision of the Commissioner of the United States Social Security Administration is not supported by substantial evidence or is not in accordance with the correct legal standards, I recommend that it be reversed and remanded for further proceedings.

I.

      Plaintiff was thirty-nine years of age at the time of his administrative hearing in May 2007.  He stands five feet, seven inches tall.  Plaintiff has an eleventh grade education.  His past relevant work was as a mason/brick layer for a construction company.  Plaintiff protectively applied for disability benefits and Supplemental Security Income payments in

---

[1]This matter comes before the undersigned pursuant to the Standing Order of this court dated August 28, 1987.  *See also* M.D. Fla. R. 6.01(c)(21).

February 2004, alleging disability as of September 1, 2003, by reason of left arm, back, and hip pain. Plaintiff's applications were denied originally and on reconsideration.

The Plaintiff, at his request, then received a *de novo* hearing before an Administrative Law Judge ("ALJ"). The Plaintiff was represented at the hearing by counsel and testified in his own behalf. In essence, Plaintiff testified that he is unable to work due to unbearable pain in his back and problems with his left leg. By his account, he first injured himself when he was ten years old, jumping across a ditch, landing on his tailbone and crushing three vertebrae. In 1989, he was involved in a motor vehicle accident in which his vehicle collided head-on with a semi. Plaintiff testified that his left leg is approximately four inches shorter than his right leg, which causes him difficulty walking. He wears a special shoe to accommodate for the different length of his legs, which is made so that his foot is not flat but rolls forward and is at a forty-five degree angle. As a result, his hip bothers him "real bad" when he walks.

Plaintiff has past work as a mason, laying and carrying block. Following his accident in 1989, he was on a period of disability, but then returned to laying block until 2003, at which time he was unable to perform the work due to the pain he was experiencing.

As for daily activities, Plaintiff testified that he lies around most of the day, watching television. By his account, he is in bed three-quarters of the day. Engaging in even minimal activity causes him pain. He will lie around, but then has to shift positions to get more comfortable. He does try to get up and go outside, but after a few minutes, he has to come back in and lie down again. On a scale of one to ten with ten being the most intense pain, he estimated that his pain is at a level of seven to ten on a daily basis. His pain is mostly in his

lower back and hip, although he also testified about arthritis in his hand and problems with the back of his neck. His low back and hip pain occurs even without activity. He experiences neck pain four to five hours per day and it occurs no matter what he is doing. Plaintiff testified to pain in his left arm and problems with his wrist swelling. Additionally, Plaintiff has difficulty sleeping due to his pain. While he is able to sleep well on occasion, at other times he may sleep only two hours and is frequently up throughout the night. Plaintiff takes medication for the pain in his back, but nevertheless still experiences intense pain on a daily basis. Plaintiff did not complain of any side effects resulting from the medication.

Plaintiff testified that, at present, he is being treated by Dr. Kimberly Smith. When asked about a period of time in which he did not receive treatment, Plaintiff explained that he was unable to pay for the doctors. His parents have helped pay for some of his medical treatment. Plaintiff does not drive. He can ride comfortably in a car for approximately ten minutes before he needs to get out and stand up. He denies participating in any activities or even going outside of his home. For the most part, others shop and prepare his meals for him. (R. 307-15).

Also before the ALJ were medical records outlining the Plaintiff's medical history. These matters are addressed adequately by the parties' memoranda and are not set out herein in detail.

By his decision of June 6, 2007, the ALJ determined that while Plaintiff has severe impairments related to a history of motor vehicle accident in 1989; status post open reduction internal fixation left lower extremity/knee; and complaints of chronic left leg pain, low back pain, and hip pain; he nonetheless had the residual functional capacity to perform a limited

range of sedentary work.  Upon this finding, the ALJ concluded that Plaintiff could perform

jobs available to him in the local and national economy.  Upon this conclusion, the Plaintiff

was determined to be not disabled.  (R. 18-25).  The Appeals Council denied Plaintiff's

request for review, and the ALJ's decision became the final decision of the Commissioner.

## II.

In order to be entitled to Social Security disability benefits and Supplemental

Security Income payments, a claimant must be unable "to engage in any substantial gainful

activity by reason of any medically determinable physical or mental impairment which . . .

has lasted or can be expected to last for a continuous period of not less than 12 months. . . ."

42 U.S.C. § 423(d)(1)(A).  A "physical or mental impairment," under the terms of the Act, is

one that "results from anatomical, physiological, or psychological abnormalities which are

demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  *Id.* at

§ 423(d)(3).

A determination by the Commissioner that a claimant is not disabled must be upheld

if it is supported by substantial evidence and comports with applicable legal standards.  *See*

*id.* at § 405(g).  Substantial evidence is "such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971)

(quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)); *Miles v. Chater*, 84

F.3d 1397, 1400 (11th Cir. 1996).  The Commissioner must apply the correct law and

demonstrate that he has done so.  While the court reviews the Commissioner's decision with

deference to the factual findings, no such deference is given to the legal conclusions.  *Keeton*

4

*v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. *Grant v. Richardson*, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. *Celebrezze v. O'Brient*, 323 F.2d 989 (5th Cir. 1963). Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to re-weigh the evidence, but is limited to determining whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. *Miles*, 84 F.3d at 1400; *Bloodsworth v. Heckler*, 703 F.2d 1233 (11th Cir. 1983).

The scope of review is limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002); *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988).

III.

The Plaintiff raises three claims on this appeal. As stated by the Plaintiff, they are as follows:

(1) The ALJ failed to properly evaluate whether the Claimant's impairment met or equaled the listing for 1.04, Disorders of the Spine;

(2) The ALJ erred in failing to make proper credibility findings as to the Claimant's testimony; and

(3) The ALJ erred in determining the Claimant's residual functional capacity ("RFC").

By his first argument, Plaintiff urges that the ALJ erred at step three of the sequential evaluation by failing to discuss the evidence and explain his conclusion that Plaintiff did not have an impairment or combination of impairments that met or equaled the listing for Disorders of the Spine, 1.04. To demonstrate that he met the listing, Plaintiff points to a report of an MRI of his lumbar spine, which indicated that he has "superimposed facet hypertrophy at L5-S1 causes Foramina stenosis, left greater than right and I cannot exclude a resultant nerve root compression." Further, Plaintiff references the report of Dr. Bhupendra Gupta, a consulting examiner, which noted a loss of reflex on Plaintiff's left side where there was a fusion and an abnormal gait without corrective shoes. Plaintiff urges that these objective findings demonstrate a spine disorder that meets listing 1.04, and the ALJ was obliged to address this evidence in rendering his decision. And, according to Plaintiff, the ALJ's failure to do so necessitates remand. (Doc. 14 at 3-5).

In response, the Commissioner argues that Plaintiff fails to demonstrate that his impairment met or equaled the requirements of listing 1.04(A) because the medical records do not show evidence of motor loss or muscle weakness that is accompanied by sensory or reflex loss or an inability to ambulate effectively. Specifically, the Commissioner contends that the medical evidence reveals that Plaintiff's sensory findings were normal; he has no neurological deficits; he has normal range of motion in his joints, except his knees; there is no indication of

any muscle weakness or atrophy; his motor examination was normal; his motor strength in upper and lower extremities was normal; and his motor, sensation, and deep tendon reflexes were within normal limits. Accordingly, the Commissioner urges that the Plaintiff failed to meet his burden of proving the existence of a listed impairment. (Doc. 15 at 4-7).

The listing of impairments in the Social Security Regulations identifies impairments that are considered severe enough to prevent a person from engaging in gainful activity. By meeting a listed impairment or otherwise establishing an equivalence, a plaintiff is presumptively determined to be disabled regardless of his age, education, or work experience. Thus, an ALJ's sequential evaluation of a claim ends if the claimant can establish the existence of a listed impairment. *Edwards v. Heckler*, 736 F.2d 625, 628 (11th Cir. 1984). However, at this stage of the evaluation process, the burden is on the plaintiff to prove that he is disabled. *Bell v. Bowen*, 796 F.2d 1350, 1352 (11th Cir. 1986); *Wilkinson v. Bowen*, 847 F.2d 660, 663 (11th Cir. 1987). In this circuit, a plaintiff must present specific findings that meet the various tests listed under the applicable listing. Mere diagnosis of a listed impairment is not enough as the record must contain corroborative medical evidence supported by clinical and laboratory findings. *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991). To "equal" a listing, "the medical findings must be 'at least equal in severity and duration to the listed findings.'" *Wilson*, 284 F.3d at 1224. Where the plaintiff claims an impairment that equals one of the listed impairments, he must present medical evidence which describes how the impairment has such an equivalency. *Bell*, 796 F.2d at 1353.

To meet the requirements of listing 1.04, a claimant must establish that he has an impairment -- "e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis,

7

osteoarthritis, degenerative disc disease, facet arthritis, or vertebral fracture, resulting in compromise of a nerve root (including the cauda equina) or the spinal cord." 20 C.F.R. Pt. 404, Subpart P, Appendix 1, listing 1.04. In addition, the impairment must manifest the following symptoms under listing 1.04A: "Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)." *Id.* at 1.04A.

Here, the ALJ specifically found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (R. 21) (citations omitted). He also noted that, "no treating or examining physician has suggested the presence of any impairment or combination of impairments of listing level severity." *Id.* Although the ALJ did not explicitly address the requirements of listing 1.04A in his decision or explain why the medical record in this case did not establish the criteria of such, he stated that he had considered that particular listing and did not find the presence of any criteria set forth in that listing to warrant a finding that Plaintiff met or equaled any listing. *Id.* Although Plaintiff contends that the ALJ's summary finding was insufficient and the ALJ was required to address the particular medical evidence at this step, this circuit has concluded otherwise.[2] *See Hutchinson v. Bowen*, 787 F.2d 1461,1463 (11th Cir. 1986) (providing that an ALJ need not recite the

---

[2] Plaintiff's reliance on a Tenth Circuit decision to the contrary is unavailing.

evidence relied upon in finding that a claimant does not meet a listing because an implicit finding suffices). Thus, the issue is whether the ALJ's finding is supported by substantial evidence.

Upon independent review of the record, I conclude substantial evidence supports the ALJ's finding that Plaintiff's musculoskeletal impairment(s) did not satisfy the requirements of listing 1.04A. Here, it appears that the MRI of Plaintiff's lumbar spine in March 2007 supports that Plaintiff has an impairment of the type listed in 1.04A, i.e., spinal stenosis or a herniated disc. *See* (R. 289). However, contrary to Plaintiff's assertion, the medical record does not demonstrate that the remaining listing requirements are met. Notably, the radiologist's report of the MRI noted that he "cannot exclude resultant nerve root compression." *Id.* That equivocal statement fails to demonstrate the foraminal stenosis in Plaintiff's lumbar spine "result[s] in compromise of a nerve root," let alone that it did so for the required durational period. Plaintiff's reliance on other notations from the MRI, i.e., a concentric bulging annulus, far lateral left-sided broad-based disk protrusion at L5-S1, and decreased disk signal at L4-5 and L5-S1 (the latter two which support a chronic condition), also fail to establish an impairment resulting in compromise of a nerve root compression.[3] In any event, Plaintiff fails to demonstrate that the other required findings under the listing are met. The medical evidence fails to demonstrate limitation of motion of the spine and a positive straight leg raising test in the seated and supine positions bilaterally. Here, Dr. Gupta was the only physician to document Plaintiff's range of motion and perform a straight leg

---

[3]To this end, Dr. Gupta concluded that "sensory findings are normal throughout body." (R. 161).

raise test during the pertinent period. According to him, Plaintiff had a normal range of

motion in his spine and a negative straight leg test on both legs.[4] *See* (R. 161, 167). Further,

as the Commissioner correctly notes, the record also fails to reveal any muscle atrophy, and

while there is evidence of decreased motor strength in Plaintiff's left knee due to a fusion and

left ankle due to ankylosis, such is without sensory loss.[5] *See* (R. 164-65). While Plaintiff's

back condition (as well as his knee and hip problems) undoubtedly impairs his physical

functioning to a great degree, the evidence upon which he relies simply is insufficient to

demonstrate that the requirements of listing 1.04A are met. In light of this evidence, Plaintiff

has not met his burden of proof and can not prevail on this claim.[6]

Because they are related and involve determinations made by the ALJ at step four of

the sequential evaluation, Plaintiff's last two claims are addressed together. By his second

claim, Plaintiff challenges the ALJ's credibility determination. According to Plaintiff, the

---

[4]A straight leg raise test is positive if pain is felt when a leg is lifted to the 30° to 70° range. http://www.spineuniverse.com/article/herniated-discs-tests-straight-leg-4631.html. The test performed by Dr. Gupta revealed that Plaintiff lifted his left and right leg 30° without pain. (R. 161).

[5]As eluded to by the Commissioner, a claimant must also demonstrate an inability to ambulate effectively. This criteria is not set forth in listing 1.04. Rather, it is factor to be considered under all of the Musculoskeletal System Listings in 20 C.F.R. Part 404, Subpart P, Appendix 1, § 1.00, et seq., as it is included in the relevant criteria in the introduction. The record documents that Plaintiff has an antalgic gait without corrective shoes but with them is able to walk better and without an assistive device. *See* (R. 165).

[6]Plaintiff also suggests, in summary fashion, that he has documented injuries that equal listing 1.04. Plaintiff, however, provides no argument demonstrating that his back condition establishes a listing equivalence. *See Wilkinson*, 847 F.2d at 662 (stating that the claimant must present evidence that describes how his impairment equals a listed impairment). Because Plaintiff presented no evidence describing how his impairment(s) have such an equivalency, he has failed to meet his burden of proof and may not prevail on this claim. *See Carnes*, 936 F.2d at 1218; *Wilkinson*, 847 F.2d at 662.

ALJ violated Social Security Ruling ("SSR") 96-7p and 20 C.F.R. § 1529 by failing to adequately address Plaintiff's complaints of pain and other symptoms and articulate reasons for his conclusory finding that Plaintiff's subjective allegations were not fully credible. Not having done so, Plaintiff urges that his testimony must be accepted as true. In the alternative, Plaintiff contends that even if the statements made by the ALJ in the body of the decision are found to suffice for a credibility explanation, those reasons are not supported by substantial evidence. By Plaintiff's reading of the decision, the only reason the ALJ provided for discounting his subjective allegations was his failure to obtain ongoing medical care. Plaintiff argues this reason is insufficient because there is no indication in the record that such treatment would be available or that he suffers from the sort of condition that would benefit from ongoing treatment. In support thereof, Plaintiff cites to an introductory portion of the musculoskeletal listing, which addresses the documentation of musculoskeletal impairments.[7] (Doc. 14 at 5-8). The Commissioner counters that the ALJ adequately discounted Plaintiff's subjective allegations on the basis of the medical record and a lack of treatment. (Doc. 15 at 7-10).

---

[7]This provision states: "When there is no record of ongoing treatment. Some individuals will not have received ongoing treatment or have an ongoing relationship with the medical community despite the existence of a severe impairment(s). In such cases, evaluation will be made on the basis of the current objective medical evidence and other available evidence, taking into consideration the individual's medical history, symptoms, and medical source opinions. Even though an individual who does not receive treatment may not be able to show an impairment that meets the criteria of one of the musculoskeletal listings, the individual may have an impairment(s) equivalent in severity to one of the listed impairments or be disabled based on consideration of his or her residual functional capacity (RFC) and age, education and work experience." 20 C.F.R. Pt. 404, Subpt. P, App. 1, listing 1.00H(3).

By his third claim, Plaintiff challenges the ALJ's residual functional capacity determination as not unsupported by the objective evidence of record. In particular, Plaintiff argues that the ALJ improperly disregarded Dr. Smith's opinion that Plaintiff could perform significantly less than sedentary exertional work as unsupported by objective evidence. According to Plaintiff, Dr. Smith's opinion is supported by objective evidence and consistent with his complaints of severe pain and limited activities. Additionally, Plaintiff faults the ALJ for ignoring a note in the file dated June 10, 2004, whereby the SSA telephoned Dr. Gupta and clarified his opinion on Plaintiff's ability to walk (only 15 minutes in an 8-hour day). In light of these errors, Plaintiff urges that the decision should be reversed and remanded for further consideration. (Doc. 14 at 9-10). The Commissioner counters that the ALJ is the one charged with determining Plaintiff's functional capacity based on an evaluation of all the relevant evidence, and in this case the ALJ properly discounted Dr. Smith's opinion because the checkmark form she completed, without more, was conclusory, unsupported by her records, and was contradicted by Dr. Gupta's findings. (Doc. 15 at 11-14).

At step four of the evaluation process, the adjudicator assesses the claimant's residual functional capacity to determine whether the claimant's impairments prevent him from performing his past work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). This assessment is based on all relevant evidence of a claimant's remaining ability to do work despite his impairments. *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); 20 C.F.R. §§ 404.1545(a), 416.945(a). The focus of this assessment is on the doctor's evaluation of the claimant's condition and the medical consequences thereof. *Lewis*, 125 F.3d at 1440.

Additionally, in evaluating a claimant's residual functional capacity, the ALJ is obliged to consider all of the claimant's impairments, including subjective symptoms such as pain.[8] If a claimant can still do the kind of work he has done in the past, then the Regulations require that he be found not disabled. At this stage of the evaluation process, the burden is on the Plaintiff to show that he can no longer perform her past relevant work. *Jackson v. Bowen*, 801 F.2d 1291, 1292 (11th Cir. 1986).

Here, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform a limited ranged of sedentary exertional work.[9] In particular, the ALJ determined that:

---

[8]Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so or the record must be obvious as to the credibility finding. *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995); *Jones v. Dep't of Health & Human Servs.*, 941 F.2d 1529, 1532 (11th Cir. 1991). A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. *Hale v. Bowen*, 831 F.2d 1007, 1012 (11th Cir. 1987). The lack of a sufficiently explicit credibility finding may give grounds for a remand if the credibility is critical to the outcome of the case. *Smallwood v. Schweiker*, 681 F.2d 1349, 1352 (11th Cir. 1982). Thus, where credibility is a determinative factor, the ALJ must explicitly discredit the testimony or the implication must be so clear as to amount to a specific credibility finding. *Foote*, 67 F.3d at 1562.

[9]"Sedentary work" involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. §404.1567(a). Social Security Ruling 83-10 elaborates on the definition of sedentary by providing that, "[o]ccasionally means occurring from very little up to one-third of the time," and that "periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour workday." *Kelley v. Apfel*, 185 F.3d 1211, 1213 n.2 (11th Cir. 1999).

> [the claimant has the [RFC] to lift and/or carry 10 pounds
> occasionally and less than 10 pounds frequently, stand
> and/or walk at least two hours in an eight-hour workday, and
> sit about six hours in an eight-hour workday, with pushing
> and pulling unlimited. The claimant is precluded from more
> than occasional climbing (never ladder, rope, scaffolds,
> balancing, stooping, kneeling, crouching, and crawling
> secondary to low back pain.[10] The claimant should avoid
> concentrated exposure to temperature extremes and avoid
> moderate exposure to hazardous machinery and unprotected
> heights.

(R. 21). In assessing Plaintiff's RFC, the ALJ set forth Plaintiff's subjective allegations,

assessed the credibility of the same, and discussed the medical evidence of record. (R. 21-

24). The medical evidence essentially is comprised of the following: (1) records from

Florida Orthopaedic Institute dated 1990-1993; (2) a consultative examination performed by

Dr. Gupta in June 2004 at the request of the Office of Disability Determinations; (3) records

from Florida Orthopaedic Institute dated August-October 2004; (4) an MRI of Plaintiff's

lumbar spine dated April 2007; (5) a form captioned "Medical Opinion Re: Ability to do

Work-Related Activities (Physical) completed by Dr. Smith in April 2007, wherein she

opined that Plaintiff had the RFC to perform substantially less than sedentary work;[11] and (6)

---

[10]Because the parenthetical is open-ended in the decision, it is difficult to know what limitations were assessed in connection with balancing, stooping, kneeling, crouching, and crawling.

[11]Dr. Smith opined that Plaintiff could lift and/or carry less than ten pounds on a frequent and occasional basis; could stand and walk less than 2 hours during an 8-hour day; could sit less than 2 hours during an 8-hour day; had to frequently change position and walk around (every 0-10 minutes); needed to be able to shift at will from sitting or standing/walking; had to lie down 3/4 of a workday; could never stoop, crouch, or climb stairs/ladders and only occasionally twist; could not push/pull; and would likely be absent from work more than three times a month. (R. 292-94).

four RFC assessment forms completed by non-examining, reviewing state agency doctors, wherein the doctors opined that Plaintiff could perform varying ranges of light to sedentary work.

Here, the decision reflects that ALJ "afforded little weight" to the opinions expressed by Dr. Smith, finding that they were "conclusory and without explanation as to why [there were] such exaggerated limitations," and were not "accompanied by an objective evaluation or examination report or by objective findings that would support" the assessment. (R. 24). The ALJ did not adopt the opinions of the state agency doctors either because he viewed their reports as permitting light exertional work. Instead, the ALJ gave "great weight" to Dr. Gupta's opinion regarding Plaintiff's physical impairments and limitations, noting the doctor's report that Plaintiff "walks with ease and can ambulate without assistive devices." *Id.* With respect to Plaintiff's subjective allegations, the ALJ concluded:

> [w]hile the claimant does complain of left knee pain and low back pain, his condition would not appear to preclude all work activity. In addition, the last time claimant was treated for left knee pain was on October 19, 2004. On this date Dr. Sanders instructed claimant to weightbear as tolerated. There are absolutely no medical records from October 2004 through March 2007, when claimant underwent an MRI of his lumbar spine due to complaints of low back pain. Although claimant complained of neck pain at his hearing, examination of the cervical spine on June 2, 2004, was completely normal. The undersigned acknowledges the claimant's contention that he was constrained financially from seeking medical treatment in 2005 and 2006. However, the undersigned believes that medical treatment is available to those people in dire financial straights who have medical problems serious enough to drive them to seek such treatment. Therefore, the undersigned is persuaded that the claimant did not require ongoing medical treatment for any of his medical conditions.

(R. 24).

Upon careful review of the record, I conclude that a remand is required. Although the ALJ fully credited Dr. Gupta's opinion, it is not clear at all whether he considered the doctor's follow-up opinion that Plaintiff was capable of standing/walking only 15 minutes in an 8-hour day (R. 107). Notably, the Commissioner does not address this omission. While the ALJ need not comment on every piece of opinion evidence, the ALJ's failure to address this aspect of Dr. Gupta's opinion is a glaring omission given that Dr. Gupta did not specifically comment on Plaintiff's functional capacity in his consultative report. Dr. Gupta's clarification on Plaintiff's ability to walk appears to support one of the nonexamining doctor's RFC opinion, *see* (R. 170–77), as well as the standing/walking limitations identified by Dr. Smith. Furthermore, one of the state agency doctors concluded that Plaintiff could stand/walk about 2 hours in an 8-hour day after noting that Dr. Gupta noted no time limitations on standing, *see* (R. 187). Thus, this assessment by Dr. Gupta was pivotal to the decision and the ALJ's failure in this regard mandates reversal. *See Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987) (providing that the ALJ must state with particularity the weight given different medical opinions and the reasons for the weight given, and failure to do so is reversible error); *McCruter v. Bowen*, 791 F.2d 1544, 1548 (11th Cir. 1986) (providing that it is improper for an ALJ to focus on one aspect of the evidence while disregarding or ignoring other contrary evidence). On remand, the ALJ should be directed to clearly identify the medical evidence and opinions on which he relies when reassessing Plaintiff's functional capacity. In doing so, the ALJ may not substitute his opinion for that of plaintiff's doctors.

*See Freeman v. Schweiker*, 681 F.2d 727, 731 (11th Cir.1982) (ALJ may not substitute his opinion for that of a doctor). At the hearing on remand, a vocational expert may well be required.

Because the ALJ's consideration of Dr. Gupta's standing/walking limitation may impact the proper assessment of Plaintiff's credibility and the weight accorded to at least a portion of Dr. Smith's opinions, Plaintiff's remaining arguments need not be addressed.[12] *See Jackson*, 801 F.2d at 1294 n. 2) (stating that where remand is required, it may be unnecessary to review other issues raised).

IV.

For the foregoing reasons, I conclude that the decision of the Commissioner of the United States Social Security Administration is not supported by substantial evidence or is not in accordance with the correct legal standards, and I recommend that it be reversed and remanded for further proceedings before the Commissioner consistent with this Report and Recommendation. I further recommend that the Clerk be directed to enter Judgment in favor

---

[12]This being said, it appears that the ALJ stated adequate cause for rejecting certain portions of Dr. Smith's RFC opinion. The record did not include any of her treatment notes and she failed to adequately explain some of the limitations she identified. As for the ALJ's consideration of Plaintiff's credibility, the ALJ is reminded that a lack of treatment is not necessarily a sufficient reason to discredit a claimant's subjective complaints. *See* SSR 96-7p, 1996 WL 374186, * 7  (S.S.A.) (providing that an ALJ may not draw any inferences about a claimant's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that Plaintiff may provide, or other information in the case record, that may explain the infrequent or irregular medical visits or failure to seek medical treatment).  Here, the ALJ did not develop the record in this regard.  Notably, the ALJ did not ask Plaintiff whether he sought and was denied low cost or free care and he did not address what, if any, ongoing care would have benefitted Plaintiff.

of the Plaintiff and to close the case, and the matter of fees and costs shall be addressed upon

further pleadings.

Respectfully submitted this
19th day of January 2009.

THOMAS B. McCOUN III
UNITED STATES MAGISTRATE JUDGE


## <u>NOTICE TO PARTIES</u>

Failure to file written objections to the proposed findings and recommendations contained in this report within ten days from the date of its service shall bar an aggrieved party from attacking the factual findings on appeal and a *de novo* determination by a district judge.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; M.D. Fla. R. 6.02; *see also* Fed. R. Civ. P. 6; M.D. Fla. R. 4.20.


Copies furnished to:
The Honorable Steven D. Merryday, United States District Judge
Counsel of Record